UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY RAE MALDONADO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JAMES YATES, et al.<br><br>　　　　Defendants. | Case No.: 1:11-cv-01885 - AWI - JLT (PC)<br><br>FINDING AND RECOMMENDATION OF DISMISSAL WITHOUT LEAVE TO AMEND<br><br>(Doc. 8) |

　　　Plaintiff Billy Rae Maldonado ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on November 14, 2011. (Doc. 1). On March 27, 2013, the Court dismissed the original complaint and granted Plaintiff leave to amend. (Doc. 7). Plaintiff timely filed his first amended complaint on April 8, 2013, (Doc. 8), which the Court now screens pursuant to 28 U.S.C. § 1915A.

　　　For the following reasons, the Court recommends the matter be **DISMISSED.**

**I.　SCREENING REQUIREMENT**

　　　Because Plaintiff is seeking redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify cognizable claims. 28 U.S.C. § 1915A(a)-(b). The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary

relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II.   PLEADING STANDARDS

### A.   Fed. R. Civ. P. 8(a)

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 677-682 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Id. at 1949) (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 1950.

### B.   42 U.S.C. § 1983

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See* Crumpton v.

Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

**III.     FIRST AMENDED COMPLAINT**

At all times relevant to the complaint, Plaintiff was incarcerated at Pleasant Valley State Prison. (Doc. 8 at 2-3). Plaintiff names N. Greene, a correctional sergeant at PVSP, and J.M. Wooded, a correctional lieutenant at PVSP, as defendants in this matter. Id. at 2-3. In addition, Plaintiff names the following PVSP correctional officers as defendants: S. Mendoza, P. Soares, L. Navarro, and E. McBride.[1] Id. at 3. Plaintiff submits a relatively indecipherable[2] and nonsensical amended complaint, which is summarized, as best as the Court can determine, as follows:

On February 6, 2008, Defendant Mendoza randomly selected and ordered Plaintiff to submit to a urinalysis test. (Doc. 8 at 3). As Plaintiff suffered from undisclosed problem with his prostate and bladder and from Valley Fever, he was unable to provide a urine sample. Id. Plaintiff offered instead to submit to a blood test. Id. Plaintiff blames Defendant Greene for the urinalysis incident. Id. It appears that Plaintiff's refusal to urinate caused some disciplinary action, as Defendant Soares was assigned, possibly, to write a CDC-115 rules violation report on February 11, 2008. Id.

Plaintiff alleges Defendant McBride was responsible for "stacking of CDC-115." Id. On that same day, Defendant Wooded issued a "CDC 128 Chrono." Id. at 4. He also stated that Plaintiff was healthy and should be assigned "extra work," despite his knowledge of Plaintiff's medical issues. Id. at 4. An undisclosed prison official assigned Plaintiff extra duty. Id. Plaintiff also "lost of all privileges no phone calls no packages no showers no day room no yard not able to attend religious services cause some correctional officer was taking me of the list." Id.

---

[1] Plaintiff named James Yates, the Warden of PVSP, and the California Department of Corrections as defendants in his original complaint. (Doc. 1). It appears that Plaintiff does not assert a claim against these defendants in his first amended complaint. (Doc. 8). Therefore, it is recommended that these defendants be **DISMISSED**.
[2] Inexplicably, Plaintiff capitalizes the first letter of every word, does not include complete sentences and only occasionally inserts punctuation. As a result, it is very difficult for the Court to determine where one sentence ends and the next begins.

On April 2, 2008, Defendant Navarro issued a CDC-115 in which Plaintiff was required to perform "extra duty" work. Id. at 3. J.C. Smith, a correctional lieutenant at PVSP, again stated that Plaintiff was in good health on May 12, 2008. Id. at 4.

## IV. DISCUSSION AND ANALYSIS

### A. The Court does not have jurisdiction over Plaintiff's Fourth Amendment claim.

Plaintiff's reference to a urinalysis test points to a Fourth Amendment claim against Defendant Greene and Mendoza, as a urinalysis test is considered a search or a seizure under the Fourth Amendment. Thompson v. Souza, 111 F.3d 694, 701 (9th Cir. 1997)(*citing* Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 617 (1989)). A urinalysis test must be performed in a reasonable manner to comply with the Fourth Amendment. Thompson, 111 F.3d at 701. The Ninth Circuit Court of Appeals determines "reasonableness" by analyzing whether a urinalysis test was "reasonably related to a penological interest." Id. at 702. However, as the United States Supreme Court has held, prison officials are given a "wide-ranging deference in the adoption and execution of policies and practices that in their personal judgment are needed to preserve internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Moreover, "[t]here is no question that 'use of narcotics is a problem that plagues virtually every penal and detention center in the country.'" Thompson, at 702 quoting Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986).

Here, Plaintiff claims he was selected for random drug-testing and, seemingly, takes issue with the random nature of the selection process. (Doc. 8 at 3) It appears he contends that the officers should have had to articulate a basis for suspecting Plaintiff was using drugs or had a history of criminal convictions indicating drug abuse, before he could be required to submit to drug testing. Id. This argument was rejected in Thompson.[3] To the contrary, prison officials are *required* to use a random selection process in order to protect inmates from harassment and are not permitted to narrow the list of those who may be tested to such individuals. Thompson, at 702. Only in this manner can officials assure themselves the testing process is reasonable under the Fourth Amendment. Id.

---

[3] In Thompson, the plaintiff complained that he should not have been required to submit to drug testing because it was his cellmate, not himself, suspected of drug use. Id. at 702-703.

4

On the other hand, Plaintiff fails to aver that Defendants Green and Mendoza *actually* seized a urine sample from him. (Doc. 8 at 3). Instead, it appears he was ordered to test but did not. Id. Given this, Plaintiff does not claim he sustained any actual injury that is traceable to Defendants that would establish a case or controversy. Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). Thus, Plaintiff has not alleged a cognizable claim. Lewis, 494 U.S. at 477. Notably, Plaintiff was advised previously of the foregoing and continues to fail to state a claim. Thus, the Court concludes Plaintiff is unable to state a claim under the Fourth Amendment. Therefore, the Court recommends Plaintiff's Fourth Amendment claim be **DISMISSED.**

### B. **Plaintiff fails to state an Eighth Amendment claim.**

Plaintiff appears to assert an Eighth Amendment claim of cruel and unusual punishment against Defendants Soares, Navarro, McBride, and Wooded for assigning him to "extra duty" work[4] given his current physical condition. (Doc. 8 at 3-4). Notably, it appears this extra work was assigned as discipline for Plaintiff's failure to submit to the random drug testing. Id.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (*citing* Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Prison officials have a "duty to ensure that prisoners are provided with adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). To establish a violation of this duty, a prisoner must satisfy both an objective and subjective component. *See* Wilson v. Seiter, 501 U.S. 294, 298 (1991). A prisoner must demonstrate an objectively serious deprivation, one that amounts to a denial of "the minimal civilized measures of life's necessities." Keenan v. Hall,

---

[4] Plaintiff's claim for the "extra duty" assignment may also be analyzed under a Fourteenth Amendment Due Process Claim. Plaintiff appears to allege that Defendants willfully and falsely issued the rules violations so that Plaintiff would be assigned "extra work." (Doc. 8 at 3-4). However, the imposition of extra duty work does not impose an "atypical and significant hardship on an inmate in relation to the ordinary aspects of prison life." Cobb v. Mendoza-Powers, 2012 WL 1155681, at *4 (E.D. Cal. April 5, 2012).
In his current complaint, Plaintiff does not allege he was actually required to complete the work. However, in his original complaint, he alleged he was required to clean one wall of scuff marks. (Doc. 1 at 4) Assuming he was required to do this work, this does not exceed the extra duty work imposed in other cases found not to demonstrate an atypical and significant hardship. See Miller v. Conway, 2007 WL 2782246, *11–12, 14 (D.Idaho Sept.21, 2007) (20-40 hours of extra duty does not demonstrate a liberty interest); Fordjour v. Director of CDCR, 2008 WL 782865, *3 (E.D.Cal. Mar. 20, 2008) (extra duty does not implicate a liberty interest); Booth v. Stewart, 2005 WL 2449956, *5 (D.Ariz. Sept.29, 2005) (same); Terrill v. Grannis, 2012 WL 5906648 at *8 (E.D. Cal. Nov. 26, 2012) (forth hours of extra duty does not demonstrate a due process claim).

83 F.3d 1083, 1089 (9th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). In determining whether a deprivation is sufficiently serious within the meaning of the Eighth Amendment, "the circumstances, nature, and duration" of the deprivation must be considered. Johnson, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982).

Second, a prisoner must also demonstrate that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." Wilson, 501 U.S. at 303; Johnson, 217 F.3d at 733. A prison official acts with deliberate indifference if he knows of and disregards an excessive risk to the prisoner's health and safety. Farmer, 511 U.S. at 837. In other words, the prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the inmate], and [the prison official] must also draw the inference." Id.  Here, though Defendant Wooded knew what Plaintiff reported about his physical condition, there is no indication Wooded was aware doctors agreed with Plaintiff's characterization (assuming they did) or they had issued a medical chrono that prevented him from working.  Even still, the fact that Wooded reported that Plaintiff was healthy—without noting Plaintiff disagreed with this assessment—does not demonstrate the deliberate indifference needed to demonstrate a constitutional violation. *See* Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980).  Instead, there is no showing that, even knowing what Plaintiff said about his condition, Wooded realized Plaintiff suffered from a serious medical condition but, nonetheless, made the statement about Plaintiff's good health,

On the other hand, Plaintiff fails to meet both the objective and subjective elements of an Eighth Amendment claim.  Plaintiff concludes that he lost all privileges, including loss of religious services, showers, and the yard, because "some correctional officer was taking [him] off the list" because J.W. Wooded issued Plaintiff the CDC 128 chrono. (Doc. 8 at 4).  If true, the loss of shower and outdoor facilities could be objectively serious deprivations under the Eighth Amendment. *See e.g.*, Spain v. Procunier 600 F.2d 189 (9th 1979)(loss of outdoor recreation privileges for a period of years was cruel and unusual punishment). However, Plaintiff does not report how long he was deprived of these activities. Notably, a temporary loss of privileges does not "present a dramatic departure from

the basic conditions" of prison life. Sandin v. Conner, 516 U.S. 472, 486 (1995). Thus, based upon the facts alleged, the Court cannot determine Plaintiff suffered a constitutional deprivation.

The Court previously advised Plaintiff of the standards needed to assert an Eighth Amendment claim of cruel and unusual punishment. (Doc. 7 at 4-5). Despite the Court's lengthy explanation, Plaintiff again fails to state facts to support a cognizable claim. Thus, the Court must conclude Plaintiff is unable to state a claim. Therefore, the Court recommends the claim be **DISMISSED**.

## FINDINGS AND RECOMMENDATIONS

Plaintiff fails to establish an Eighth Amendment claim of cruel and unusual punishment as he does not provide any facts to demonstrate he suffered a deprivation of Constitutional proportions. Plaintiff also fails to establish a Fourth Amendment claim of unreasonable search because he does not allege he was forced to submit to the urinalysis test.

Based upon the record and Plaintiff's failure to provide the needed facts after having been advised of what is necessary to state a claim, the Court cannot conclude the noted deficiencies can be cured by amendment. Thus, the Court finds that granting Plaintiff further leave to amend would be futile. *See* Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (requiring leave to be granted to the extent deficiencies can be cured by amendment).

Accordingly, IT IS HEREBY **RECOMMENDED** that:

1. Plaintiff's claim against Defendant Greene and Mendoza for directing Plaintiff to submit to a urinalysis test in violation of the Fourth Amendment be **DISMISSED WITHOUT LEAVE TO AMEND;** and

2. Plaintiff's claim against Defendants Soares, Navarro, McBride, and Wooded for assigning Plaintiff to "extra duty" work in violation of the Eighth Amendment be **DISMISSED WITHOUT LEAVE TO AMEND.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Plaintiff is advised failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 8, 2013**                           **/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE